### In re MANSFIELD GENERAL HOSPITAL.

[Cite as *In re Mansfield Gen. Hosp.* (1993), 90 Ohio App.3d 135.]

Court of Appeals of Ohio,
Franklin County.

No. 93AP–330.

Decided Aug. 31, 1993.

Rehearing Granted March 9, 1994.

*Bricker & Eckler, Gretchen A. McBeath, Scott W. Taebel* and *James F. Flynn,* for appellant.

*Lee Fisher,* Attorney General, and *Steven P. Dlott,* Assistant Attorney General, for appellee.

PETREE, Judge.

Appellant, Mansfield General Hospital, appeals from an order of the Certificate of Need Review Board ("CONRB") denying appellant's application for a certificate of need ("CON"). Appellant presents the following as error:

"1. The Board erred as a matter of law in finding that Ohio Adm.Code 3701–12–25 was applicable to the certificate of need application of Mansfield General.

"2. Even if Ohio Adm.Code 3710–12–25 should have been applied, Paragraph (L) of that administrative rule is in conflict with R.C. 3702.51(R)(3)(b) and is therefore invalid.

"3. Even if Paragraph (L) of Ohio Adm.Code 3701–12–25 is a valid criterion, the Board erred as a matter of law in defining 'high-risk' in accordance with the Appendix to Ohio Adm.Code 3701–12–05 for purposes of reviewing Mansfield General's application.

"4. The Board erred in finding that Mansfield General did not otherwise satisfy the criteria of Ohio Adm.Code 3701–12–25."

Appellant has sought to establish a cardiac catheterization service since 1987. At that time, a certificate of need was required for all cardiac catheterization labs. Appellant applied for and was granted a certificate of need and began providing cardiac catheterization services. The decision to grant appellant a CON was reversed by this court in the case of *In the Matter of Mansfield Gen. Hosp.* (Sept. 20, 1990), Franklin App. No. 90AP–219, unreported, 1990 WL 135883. Prior to this court's decision, the General Assembly amended R.C. 3702.51(R)(3)(b) to allow certain facilities to operate cardiac catheterization labs without obtaining a CON. R.C. 3702.51, as amended, provides:

"(R) * * * '[R]eviewable activity' means any of the following:

" * * *

"(3) The addition of a megavoltage radiation therapy service operated by or on behalf of a health care facility and the addition by any person or any of the

following health services, regardless of the amount of operating costs or capital expenditures:

" * * *

"(b) A cardiac catheterization service or the addition of another cardiac catheterization laboratory to an existing service, when the service treats or will treat high-risk patients, including but not limited to those with significant ischemic syndromes or unstable or acute myocardial infarction, patients who need an intervention such as angioplasty or bypass surgery, patients who may require difficult or complex catheterization procedures such as transeptal assessment of valvular dysfunction, and patients with critical aortic stenosis or congestive heart failure. The director of health shall use the Guidelines for Coronary Angiography established by the American Heart Association and American College of Cardiology in determining the high-risk patients for the purposes of division (R)(3)(b) of this section. A cardiac catheterization service or the addition of another cardiac catheterization laboratory to an existing service that does not treat or will not treat high-risk patients is reviewable under division (R)(3)(b) of this section unless it is or will be located within a health care facility that includes at least two hundred fifty beds registered under section 3701.07 of the Revised Code or had at least eight thousand five hundred admissions in the preceding calendar year."

Pursuant to statute, appellant[1] was no longer required to obtain a CON to operate its cardiac catheterization service. Appellant continued to operate its lab, which by law was prohibited from treating "high-risk" patients. On December 5, 1990, appellant filed an application for a CON to operate a cardiac catheterization service. Appellant's application was denied on April 26, 1991 by the Ohio Department of Health ("ODH"). Appellant appealed this decision to the CONRB. The board affirmed ODH's decision denying appellant's permit. The board based its decision on Ohio Adm.Code 3701–12–25(L)(1)(a), which requires a hospital receiving a cardiac catheterization certificate of need to have an established on-site open-heart surgery program. Appellant does not have such a program. Appellant filed a timely appeal from the board's decision and the matter is now before the court.

Appellant's first assignment of error maintains that the CONRB erred in applying Ohio Adm.Code 3710–12–25 in this matter. Ohio Adm.Code 3701–12–25 states:

---

1. Mansfield General is a health care facility that includes at least two-hundred fifty beds registered under R.C. 3701.07.

"(A) The director shall use the criteria prescribed by this rule, together with other applicable criteria established by this chapter of the Administrative Code, in reviewing an application for a certificate of need proposing:

"(1) Establishment of a new cardiac catheterization service at a hospital;

"(2) Addition of one or more cardiac catheterization laboratories to an existing service;

"(3) Construction, development, or establishment of a freestanding cardiac catheterization facility or a mobile diagnostic imaging center offering cardiac catheterization;

"(4) Relocation of one or more cardiac catheterization laboratories from one health care facility to another; or

"(5) Renovation or replacement activities relating to existing cardiac catheterization laboratories, to the extent that the activities are reviewable activities under divisions (R) and (S) of section 3702.51 of the Revised Code and rule 3701–12–05 of the Administrative Code."

The board held that appellant's application for a certificate of need proposed either the "establishment of a new cardiac catheterization service" or the "addition of one or more cardiac catheterization laboratories to an existing service." Appellant contests this decision, arguing it is not proposing a new "service" or "lab" as defined by the Ohio Administrative Code, but rather merely expanding an existing service. Appellant argues its proposed activities are not subject to Ohio Adm.Code 3701–12–25.

Ohio Adm.Code 3701–12–25(A)(1) provides the "[e]stablishment of a new cardiac catheterization service at a hospital" is subject to the criteria prescribed by Ohio Adm.Code 3701–12–25. "Cardiac catheterization service" is defined in Ohio Adm.Code 3701–12–25(B)(2) as "one or more cardiac catheterization laboratories in a hospital or in a freestanding cardiac catheterization facility or mobile diagnostic imaging center."

A "cardiac catheterization laboratory" is defined in Ohio Adm.Code 3701–12–25(B)(4) as "a room or suite of rooms in a hospital, freestanding cardiac catheterization facility, or mobile diangostic [sic] imaging center which has the equipment, staff, and support services to function as an integrated unit for the purposes of performing cardiac catheterization procedures for a single patient at a given time and which is used to perform cardiac catheterization procedures."

The language defining the terms utilized in the regulation is clear and unambiguous. The phrase "new cardiac catheterization service" is clearly defined as cardiac catheterization laboratories; the term "laboratories" is defined as "a room or suite of rooms in a hospital." The inescapable interpretation of Ohio

Adm.Code 3701–12–25(A)(1) and (2) is that the regulation defines "cardiac catheterization service" in terms of physical facilities, not the services performed. While the establishment of a new cardiac catheterization laboratory would be subject to the criteria of Ohio Adm.Code 3701–12–25, the addition of new medical procedures or service to a new class of patients is not a proposed activity subject to Ohio Adm.Code 3701–12–25, pursuant to Ohio Adm.Code 3701–12–25(A)(1).

Clearly, appellant's application would not fall within Ohio Adm.Code 3701–12–25(A)(2). "Cardiac catheterization laboratories" is clearly defined in terms of physical facilities. Appellant is not proposing construction of a new facility, but rather the performance of new procedures on a new class of patients. Based on the plain language contained in the Administrative Code, the board erred in concluding appellant's application proposed the "addition of one or more cardiac catheterization laboratories to an existing service."

The court is aware that its holding does not sustain the spirit embodied in Ohio Adm.Code 3701–12–25. However, this court is unwilling to stretch the language contained in the regulation to include certificate of need applications not specifically described. If the expansion of an existing service is to be subject to the criteria in Ohio Adm.Code 3701–12–25, clearly the regulation must be changed. The change must be made pursuant to the provision of R.C. Chapter 119, however, not by judicial activism.

Based on the foregoing, appellant's first assignment of error is sustained; the second, third and fourth assignments of error are rendered moot by the court's decision on appellant's first assignment of error. The matter is remanded to the Certificate of Need Review Board for a determination of appellant's application for a certificate of need utilizing the appropriate provisions of the Ohio Revised Code and the Ohio Administrative Code.

*Judgment reversed
and cause remanded.*

TYACK, J., concurs.

BOWMAN, J., dissents.

BOWMAN, Judge, dissenting.

Interpreting one subsection of Ohio Adm.Code 3701–12–25, the majority concludes that, because appellant's CON application did not propose physical construction of a new cardiac catheterization laboratory or the addition of another cardiac catheterization laboratory to its existing facility, appellant's CON application was not reviewable under Ohio Adm.Code 3701–12–25, so that the CONRB erred in denying appellant a CON.

I dissent because the majority focuses only upon the definition of "cardiac catheterization service" as a cardiac catheterization laboratory, and defines "cardiac catheterization laboratory" as merely a room or suite of rooms in a hospital. By that definition, any room or suite of rooms could be used for cardiac catheterizations, and the performance of cardiac catheterization procedures upon high-risk patients would only be reviewable if a new room or suite of rooms were constructed or dedicated to that purpose. The majority's reading not only fails to "sustain the spirit" of Ohio Adm.Code 3701–12–25, it also misreads the Administrative Code section.

Ohio Adm.Code 3701–12–25(B)(4) reads, in its entirety:

" 'Cardiac catheterization laboratory' or 'laboratory' means a room or suite of rooms in a hospital, freestanding cardiac catheterization facility, or mobile diangostic [*sic*] imaging center which has the equipment, staff, and support services to function as an integrated unit for the purposes of performing cardiac catheterization procedures for a single patient at a given time and which is used to perform cardiac catheterization procedures."

Ohio Adm.Code 3701–12–25(B)(5) reads, in full:

" 'Cardiac catheterization procedure' or 'procedure' means an angiographic study or physiologic study performed within a cardiac catheterization laboratory. For the purposes of the utilization criteria in this rule, all activities performed during one clinical session, including angiocardiography, coronary arteriography, pulmonary arteriography, coronary angioplasty, other diagnostic or therapeutic measures, and physiologic studies shall be considered one procedure."

The definition of "cardiac catheterization laboratory" expressly requires the room or rooms in a hospital to have "the equipment, staff, and support services to function as an integrated unit *for the purposes of performing cardiac catheterization procedures*" (emphasis added), Ohio Adm.Code 3701–12–25(B)(4), and to be used for that purpose. In addition, the definition of "cardiac catheterization procedure," which includes the high-risk procedures proposed by appellant, includes such procedures as those performed within a cardiac catheterization laboratory. Thus, cardiac catheterization service is not simply defined in terms of its physical facilities as the majority concludes, but is defined in terms of the procedures conducted therein.

By the majority's reasoning, because appellant is proposing new procedures upon a new class of patients but wishes to use its existing cardiac catheterization laboratory, no establishment of a new cardiac catheterization service has been proposed. Inevitably, however, a cardiac catheterization laboratory must be defined by the procedures conducted therein, and is never merely a room or suite of rooms in a hospital. The cardiac catheterization laboratory and the procedures

conducted there are inextricably bound, and the definitions of both "cardiac catheterization service" and "cardiac catheterization laboratory" must be read to reflect the procedures performed within that room or suite of rooms in a hospital.

I also dissent because I find Ohio Adm.Code 3701–12–25 to be consistent with R.C. Chapter 3702 and pertinent to appellant's proposed upgrade from the nonreviewable cardiac catheterization procedures it currently offers to low-risk patients to the reviewable high-risk procedures for which an accompanying open-heart surgery capability is mandated.

Whether appellant would alter its physical facilities, appellant's CON application clearly seeks to establish or add a new cardiac catheterization service because appellant does not require a CON in order to conduct the low-risk procedures it presently conducts, and does require a CON in order to perform any high-risk procedure, pursuant to Ohio Adm.Code 3701–12–25(L)(1).[2] Thus, appellant's proposed cardiac catheterization service is new so far as the CON review process is concerned.

Ohio Adm.Code 3701–12–25(L)(1) reads, in part:

"The director shall not grant a certificate of need under this rule relating to a cardiac catheterization service in which * * * high-risk procedures will be performed or high-risk or pediatric patients *are or will be served* unless:

"(a) The service is or will be located in a hospital which has the capability for emergency coronary artery surgery, including having:

"(i) An established on-site open-heart surgery program located in close proximity to the relevant laboratory or laboratories. * * * " (Emphasis added.)

R.C. 3702.51(R)(3)(b) includes within those activities listed as reviewable a "cardiac catheterization service or the addition of another cardiac catheterization laboratory to an existing service, when the service treats or will treat high-risk patients."

Both the statute and the regulation contemplate that a cardiac catheterization service may already be serving high-risk patients without a CON, and allow the director to deny a CON to such a facility unless open-heart surgery capabilities are already on-site. Thus, R.C. 3702.51(R)(3)(b) and Ohio Adm.Code 3701–12–25, read in their entirety, indicate that a hospital need not propose adding a new physical facility in order to establish a new cardiac catheterization service.

---

**2.** Thus, although appellant's CON application evades the issue of what type of procedures it proposes to conduct, the CONRB properly assumed appellant sought permission to conduct cardiac catheterization procedures upon high-risk patients, since only such a proposal would require a CON.

The majority apparently finds that the statute and the rule are incompatible, and so invalidates the rule. "[W]here a potential conflict exists between an administrative rule and a statute, an administrative rule is not inconsistent with a statute unless the rule contravenes or is in derogation of some express provision of the statute." *Kelly v. Accountancy Bd. of Ohio* (1993), 88 Ohio App.3d 453, 459, 624 N.E.2d 292, 296, citing *McAninch v. Crumbley* (1981), 65 Ohio St.2d 31, 34, 19 O.O.3d 225, 226–227, 417 N.E.2d 1252, 1253. Here, Ohio Adm.Code 3701–12–25 is not in derogation of R.C. 3702.51(R)(3)(b). The statute generally requires that the addition of a cardiac catheterization service which treats or will treat high-risk patients is a reviewable activity, while the code indicates that the director shall use relevant criteria in reviewing the establishment of a new "cardiac catheterization service," which is defined as a laboratory in which certain cardiac catheterization procedures, including high-risk procedures, are or will be conducted.

Appellant proposes its current cardiac catheterization service, in which it conducts cardiac catheterizations upon low-risk patients and for which it does not require a CON, be replaced with a new cardiac catheterization service in which appellant would conduct cardiac catheterization procedures upon both low-risk and high-risk patients. Appellant's proposed change in the procedures it offers is reviewable pursuant to R.C. 3702.51(R)(3)(b), and Ohio Adm.Code 3701–12–25, since appellant is seeking to establish or add a cardiac catheterization service which will accommodate high-risk patients. What appellant does with its old cardiac catheterization service, in which it conducted low-risk cardiac catheterizations, is a matter not subject to ODH review, and not relevant to whether the new procedures sought to be performed, and which are reviewable, merit the issuance of a CON.

Finally, although the majority's decision concludes that appellant's application is not reviewable under Ohio Adm.Code 3701–12–25, it leaves unanswered the question of whether appellant's application is reviewable under some other criteria contained within the Administrative Code. Although the majority expressly remands this matter to the CONRB for a determination of appellant's CON application using the appropriate statutory and regulatory provisions, it is foreseeable that the CONRB will conclude that this court is ordering it to find appellant's proposal to perform cardiac catheterization procedures upon high-risk patients is not a reviewable activity, as there would appear to be no other applicable statutory or regulatory provision.

Because appellant's proposal that it be permitted to perform cardiac catheterization procedures upon high-risk patients without an open-heart surgery capability is a reviewable activity for which appellant is not entitled to a CON under Ohio

Adm.Code 3701–12–25, or any other code provision, the decision of the CONRB denying appellant a CON should be affirmed.