OPINION
{¶ 1} Donald Chilton appeals from a summary judgment for Defendant, the City of Springfield ("City"), in his appeal of the Ohio Bureau of Workmans Compensation's (BWC's) denial of his claim for benefits.
 {¶ 2} Chilton began work as a police officer for the City of Springfield in 1980. Recurring health problems led to Chilton's being declared unfit for duty and placed on "light duty" sometime in early 1997. Springfield Police Chief Roger Evans ordered Chilton to report to a physician appointed by the City for diagnostic testing and an evaluation of whether he could physically resume his duties as a police officer. The Springfield Personnel Department scheduled an appointment with Dr. Salim Dahdah.
 {¶ 3} Dr. Dahdah found that Chilton's circumflex coronary artery was 100% blocked and concluded that he was unfit to return to duty as a police officer. Dr. Dahdah recommended an angioplasty procedure to remove the blockage. Chilton agreed to the procedure. A small piece of wire accidentally broke off during the procedure and was left embedded in Chilton's artery.
 {¶ 4} Unable to return to work, Chilton filed a claim for benefits with the Ohio BWC in May, 1997. The Bureau denied the claim and Chilton appealed. Both the District Hearing Officer and, later, the Staff Hearing Officer of the Industrial Commission, denied his claim.
 {¶ 5} Chilton appealed the decision to the court of common pleas pursuant to R.C. 4123.512. The court granted the City's motion for summary judgment. Chilton filed a timely notice of appeal.
ASSIGNMENT OF ERROR
 {¶ 6} "The trial court erred in granting defendant city of springfield's motion for summary judgment."
 {¶ 7} Chilton argues that the trial court erred in finding that because he was not ordered to undergo the angioplasty procedure, the accidental injury he suffered from the procedure did not arise out of the course and scope of his employment. R.C.4123.01(C). Chilton argues that a genuine issue of material fact exists with regard to that issue which makes summary judgment erroneous. We agree.
 {¶ 8} Summary judgment is appropriate where: 1) no genuine issue of material fact remains to be litigated; 2) the movant is entitled to summary judgment as a matter of law; and 3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the non-movant. Civ.R. 56(C); Harlessv. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. Our review of a summary judgment is de novo. Navilar v. Osborn
(1998), 128 Ohio App.3d 1.
 {¶ 9} In support of its motion for summary judgment, the City submitted an affidavit by James Bodenmiller, who served as the Director of Personnel during the period in question. The affidavit asserts that Chilton "was neither ordered nor required to undergo the (angioplasty) either by the Chief of Police Division or by myself or the City Manager, or by any other person in a position of authority."
 {¶ 10} Attached to Bodenmiller's affidavit is a copy of a letter from Chief Evans, dated February 7, 1997, ordering Chilton to "return to the City physicians at a date to be scheduled through the Personnel Department," and to "cooperate fully with the diagnostic testing recommended by the physicians." The direction is coupled with a statement that Chilton could not return to work, including light duty, until a physician determined that his health no longer posed a risk to himself or other officers.
 {¶ 11} The Industrial Commission denied Chilton's claim on findings that he was ordered by the City to submit to diagnosis but not the angioplasty. While the evidence before the Commission is not in the appellate record, the Commission cites a lack of "direct documentation from the employer evidencing that they attempted to force or order the claimant to undergo the angioplasty procedure." The trial court likewise found that there was no evidence that Chilton was ordered to undergo the angioplasty procedure.
 {¶ 12} When determining whether an accidental injury occurred in the course of a claimant's employment, courts should consider: (1) the proximity of the scene of the accident to the place of employment; (2) the degree of control the employer had over the scene of the accident; and (3) the benefit the employer received from the injured employee's presence at the scene of the accident. Lord v. Daugherty (1961), 66 Ohio St.2d 441. However, those factors are non-exclusive, and in each instance the court must examine the separate and distinct facts of each case.Fisher v. Mayfield (1990), 49 Ohio St.3d 275.
 {¶ 13} The location of Chilton's injury, a health care facility to which Chilton was sent, was not in close proximity to Chilton's place of employment, as the trial court found. However, one would not expect that it would be. The court then went on to find that, for that same reason, Springfield had no control over the facility or the procedures performed there, and that Springfield would have received no particular benefit from the angioplasty Chilton underwent.
 {¶ 14} Chilton had been an officer with the Police Division of the City of Springfield for approximately seventeen years when the angioplasty was performed. Reasonable minds could find that had Chilton been able to return to work because the angioplasty was successful, the City would have benefitted by retaining the services of an experienced officer.
 {¶ 15} We agree that the proximity of the private health care facility to Chilton's place of work, as well as the nature of the procedures performed there, gave Springfield little if any control over the facility. However, the issue is not whether Springfield had control over the cause of the accident but whether it had some of degree over the "scene of the accident."Fisher v. Mayfield, at p. 277. Control of that comprehends more than the condition of the place. It also comprehends how the claimant came to be there. As the Supreme Court emphasized inFisher v. Mayfield:
 {¶ 16} "The test of the right to participate in the Workers' Compensation Fund is not whether there was any fault or neglect on the part of the employer or his employees, but whether a `causal connection' existed between an employee's injury and his employment either through the activities, the conditions or the environment of the employment." Id., at pp. 276-277.
 {¶ 17} The City argues that Chilton's angioplasty could not reasonably have been a part of the diagnostic procedures he was ordered to undergo with Dr. Dahdah. It relies on the Supreme Court's holding in In re Mansfield General Hospital (1995),72 Ohio St.3d 236, which distinguished "[l]ow risk procedures (that) are used for diagnostic purposes only, (from) high risk procedures such as angioplasties, (which) are invasive." Id., at p. 238.
 {¶ 18} In re Mansfield and the distinction the court made pertained to a hospital's certificate of need application filed pursuant to OAC 3701-12-25(L). The same factual distinction may apply here. However, it does not necessarily resolve whether in this instance the accidental injury Chilton suffered was received in the course of and arose out of his employment, R.C.4123.01(C), particularly when per Civ.R. 56(C) the evidence must be construed most strongly in Chilton's favor for purposes of summary judgment.
 {¶ 19} Entitlement to workers compensation payments is a substantive right, and the Workers Compensation Act must be liberally construed in favor of employees. State ex rel. Kirk v.Owens-Illinois, Inc. (1986), 25 Ohio St.3d 360; R.C. 4123.95. It is on that basis that we must decide whether the summary judgment for Springfield was correct.
 {¶ 20} Construing Chief Evans' Febrary 7, 1997 order in a light most favorable to Chilton, though it instructs him to undertake diagnostic procedures, it also directs him to "cooperate fully with the diagnostic testing recommended by the physicians" to whom he is referred, and states that Chilton may lose his job unless a physician finds that his health is not a danger to himself or other members of the Police Division. Reasonable minds could disagree as to how Chilton might interpret the letter.
 {¶ 21} Faced with the end of his seventeen-year career, Chilton might have understood Chief Evans' order as one to "get healthy" or lose his job, and believed that the angioplasty Dr. Dahdah recommended for the condition he diagnosed was the way Chilton was expected to do that. In that circumstance, the angioplasty was an activity of Chilton's employment environment, permitting a causal connection to the injury to be found. Fisherv. Mayfield. Or, Chilton might have understood the distinction between diagnosis and treatment, and that the order he got was limited to the former, yet chose to undergo the angioplasty anyway. Those are genuine issues of material fact that bar summary judgment and, on this record, should be determined by a jury.
 {¶ 22} The assignment of error is sustained. The judgment of the trial court will be reversed and the matter will be remanded to the trial court for further proceedings consistent with this opinion.
Wolff, J. And Young, J., concur.
Hon. Frederick N. Young, Retired from the Court of Appeals, Second District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.