HOOVER UNIVERSAL, INC., APPELLANT, *v.* LIMBACH, TAX COMMR., APPELLEE.

[Cite as *Hoover Universal, Inc. v. Limbach*
(1991), 61 Ohio St.3d 563.]

(No. 90–1008—Submitted April 16, 1991—Decided August 28, 1991.)

*Jones, Day,. Reavis & Pogue* and *John C. Duffy, Jr.*, for appellant.

*Lee I. Fisher*, Attorney General, and *Richard C. Farrin*, for appellee.

*Bricker & Eckler, Edgar L. Lindley* and *Darlene R. Gerson*, urging reversal for *amicus curiae*, Allied Signal, Inc.

---

*Per Curiam.* We hold that Hoover may claim an investment tax credit for paying personal property tax on qualifying personal property purchased by Mansfield and Rogate, transferred to Hoover in the corporate merger, and first listed for personal property tax purposes by Hoover. We also hold that Hoover may claim an investment tax credit for paying personal property tax on qualifying personal property in a short-period taxable year.

## I

### Investment Tax Credits of Merged Subsidiaries

### A

### *Facts*

Between January 1, 1978, the earliest qualifying date for the investment tax credit provided in former R.C. 5733.061, and February 29, 1980, the merger date, Mansfield and Rogate purchased personal property that qualified for the credit. On July 31, 1979, the listing date for the 1980 personal property tax, both subsidiaries owned qualifying property. The subsidiaries ceased existence on the February 29, 1980 merger date.

Hoover listed the property Mansfield and Rogate formerly owned on its 1980 personal property tax return and paid tax on it in September 1980. Hoover claimed the investment tax credit for this payment in its 1981 franchise tax return. It also claimed similar credits in its 1982 and 1983 franchise tax returns, having listed the property as of December 31, 1981, and December 31, 1982, respectively.

### B

### *Discussion*

Former R.C. 5733.061, for the relevant period, stated:

"A credit shall be allowed against the tax imposed by Chapter 5733. of the Revised Code for each taxable year. The credit shall equal the lesser of the amount of tax otherwise due under such chapter or the difference between:

"(A) The tangible personal property taxes timely paid in the taxable year that were charged against engines, machinery, tools, and implements owned

by the taxpayer, listed for taxation in this state under section 5711.16 of the Revised Code as used or designed to be used in refining or manufacturing, and acquired on or after January 1, 1978; minus

"(B) The taxes that would have been charged against such property and paid during such year had it been listed and assessed for taxation at twenty percent of its true value.

"* * *

"No credit shall be allowed against any taxes paid on property previously required to be listed for taxation in this state by a person other than the taxpayer.

"* * * *"

In its first proposition of law, Hoover argues that R.C. 5733.061 entitled the subsidiaries to this credit and that R.C. 1701.82 transfers the credit to Hoover, the surviving corporation. The commissioner, to the contrary, contends that the specific provisions of R.C. 5733.061 prevail over the general provisions of R.C. 1701.82, and that R.C. 5733.061 specifically disallows the credit if the property must be listed by a person other than the taxpayer. Since, according to the commissioner, parent and subsidiary corporations are separate and distinct legal entities, they are different persons. Consequently, the commissioner argues, Hoover cannot claim Mansfield's and Rogate's credits. We agree with the commissioner.

R.C. 1701.82(A) provides:

"When a merger or consolidation becomes effective:

"(1) The separate existence of each constituent corporation other than the surviving corporation in a merger shall cease * * *.

"* * *

"(3) The surviving or new corporation possesses all assets and property of every description, and every interest therein, wherever located, and the rights, privileges, immunities, powers, franchises, and authority, of a public as well as of a private nature, of each of the constituent corporations, and all obligations belonging to or due to each of the constituent corporations, all of which are vested in the surviving or new corporation without further act or deed. * * *

"(4) The surviving or the new corporation is liable for all the obligations of each constituent corporation * * *."

Parent and subsidiary corporations are distinct legal entities. *White Motor Corp. v. Kosydar* (1977), 50 Ohio St.2d 290, 296, 4 O.O.3d 451, 454, 364 N.E.2d 252, 255–256. R.C. 5733.061 applies especially and narrowly to this invest-

ment tax credit (R.C. 1.51), and R.C. 5733.061 denies the credit to property previously required to be listed for taxation by someone other than the taxpayer. Since a subsidiary is a person distinct from the parent, the surviving parent may not claim this credit for property previously required to be listed by the subsidiary. Consequently, Hoover does not succeed to the credit for property that Mansfield and Rogate were required to list.

Alternatively, in its second proposition of law, Hoover maintains that it may claim this investment tax credit for property it was first required to list for personal property tax purposes after it acquired the property in the merger if it timely paid the personal property tax. Under this argument, Hoover concedes that it may not claim credit for property acquired by the constituent corporations between January 1 and July 31, 1978; it seeks credit only for property acquired by Mansfield and Rogate after July 31, 1978.

The commissioner responds that Mansfield and Rogate were required to list the property, not Hoover, and that Hoover succeeded only to the liability to pay the personal property tax on the property. Thus, according to the commissioner, Hoover does not satisfy R.C. 5733.061. We disagree.

Mansfield, Rogate, and Hoover shared the same personal property tax listing date, July 31, their fiscal year end. R.C. 5711.101; Ohio Adm.Code 5703-3-03; and former TX41-02, now 5703-3-04(B). Mansfield and Rogate would have first listed this property in their 1980 personal property tax returns, and they would have first claimed the credit for this payment in their 1981 franchise tax returns.

However, under R.C. 5711.04, Mansfield and Rogate could file their 1980 personal property tax returns between February 15 and April 30, 1980. The property tax, under R.C. 5719.03(B), is annually due in September. Thus, by the time the taxes had been calculated by the county auditor and become due to the county treasurer, Mansfield and Rogate no longer existed.

Hoover subsequently undertook the obligation to list the property for taxation under R.C. 1701.82(A), which transferred the ownership of, and the duty to pay the tax on, the property to Hoover for the 1980 property tax return year. Hoover first listed this property in this return (and subsequently in the 1981 and 1982 returns) and timely paid the tax on it.

R.C. 5733.061 disallows the investment tax credit for property required to be listed by another person. Here, however, the subsidiaries were not required to list the property because they no longer existed. Under the transfer provisions of R.C. 1701.82, Hoover was required to list the property. Consequently, Hoover may claim credit for paying this personal property tax because no other person was required to list the property.

Moreover, the consolidated return theory, recited by the BTA in denying the claims, is invalid. Under this theory, Hoover, according to the BTA, listed Mansfield's and Rogate's property in Hoover's consolidated 1980 personal property tax return. Thus, the BTA reasoned, Hoover did not list its own property; it listed its subsidiaries' property.

R.C. 5711.14 allows a parent corporation to consolidate and report the property of a fifty-one percent owned subsidiary in the parent's property tax return. In the instant case, however, Hoover did not own or control the subsidiaries on and after February 29, 1980, the time for making returns. The subsidiaries no longer existed, could not be owned, and owned no property. Thus, Hoover did not list its subsidiaries' property in its return. Hoover listed its own property, formerly owned by Mansfield and Rogate, in its return and paid the tax on its property.

## II

### 1981 Short–Period Return

#### A

*Facts*

Apparently with the permission of the federal tax authorities, when Hoover changed its accounting period from fiscal year to calendar year effective August 1, 1980, it filed a return for the short federal taxable year of August 1, 1980 through December 31, 1980. Thereafter, it filed on a calendar year basis.

In Hoover's 1981 franchise tax return, as previously noted, it reported income based on its fiscal year ending July 31, 1980. Hoover claimed the investment tax credit for personal property tax paid in September 1979, which it had paid within this taxable year, and personal property tax paid in September 1980, which it had paid outside this taxable year.

The commissioner allowed the credit for tax Hoover paid in 1979, but disallowed the credit for taxes paid in September 1980, including taxes on property Hoover had acquired from sources other than Mansfield and Rogate. Hoover concedes that it should not receive the credit for the 1979 payment, but seeks the credit for the 1980 payment.

#### B

*Discussion*

Hoover argues that it had a taxable year ending July 31, 1980, and a taxable year ending December 31, 1980. It claims that it could have paid its 1981

franchise tax on the latter, short-period taxable year and that it can claim the credit for personal property taxes paid within this taxable year. The commissioner replies that Hoover may not use the short period as its taxable year, because, with a short-period return, the federal tax authority seeks to tax income that might escape taxation when a taxpayer changes its accounting period. She maintains that the short-period return has no relevance to Ohio's franchise tax.

The franchise tax, an excise tax, can be measured on net income received in a taxable year. *Litton Indus. Products, Inc. v. Limbach* (1991), 58 Ohio St.3d 169, 569 N.E.2d 481. In its franchise tax return, a taxpayer, under R.C. 5733.02 and 5733.03, reports its " * * * net income during the year or portion thereof preceding the date of commencement of its annual accounting period that includes the first day of January of the tax year * * *." Former R.C. 5733.03(J), now R.C. 5733.03(K). The taxpayer values its issued and outstanding shares of stock, on the net income basis, on the net income received in this accounting period. R.C. 5733.05(B).

R.C. 5733.04(E) defines "taxable year" as:

" * * * [T]he year or portion thereof upon the net income of which the value of the taxpayer's issued and outstanding shares of stock is determined or the year at the end of which the total value of the corporation is determined."

R.C. 5733.031(A) provides:

"A taxpayer's taxable year is the same as its taxable year for federal income tax purposes. If a taxpayer's taxable year has changed for federal income tax purposes, the taxable year for purposes of this chapter is changed accordingly."

Section 441(b), Title 26, U.S. Code, defines "taxable year" as:

"(1) the taxpayer's annual accounting period, if it is a calendar year or a fiscal year: [or]

" * * *

"(3) the period for which the return is made, if a return is made for a period of less than 12 months * * *."

Under Section 442, Title 26, U.S.Code, a taxpayer may change its annual accounting period on the approval of the Secretary of the Treasury. Under Section 443, Title 26, U.S.Code, a taxpayer must make a return for a period of less than twelve months ("short period") if the taxpayer changes its annual accounting period or is not in existence for the entire taxable year.

Thus, the period for which a short-period return is calculated is a federal "taxable year." 2 Mertens, Law of Federal Income Taxation (1989), Section 13.03. Technically, then, Hoover could have used this period for Ohio fran-

chise tax purposes because the franchise tax taxable year corresponds to a federal taxable year. Accordingly, Hoover may claim the credit for taxes paid in September 1980 since it paid them in a taxable year.

The commissioner, on the other hand, maintains that her rule, former Ohio Adm.Code 5703–5–04, controls this situation. This rule requires a taxpayer, when it changes its federal accounting period, to report the corresponding franchise tax on the twelve-month period covered by the last annual accounting period from which the corporation has changed or the twelve-month period ending December 31 of the year immediately prior to the year in which the report is being filed. The commissioner, thus, recognized the short-period problem and attempted to address it.

However, the commissioner's rule contradicts R.C. 5733.031. An Ohio franchise taxpayer's taxable year is the same as its federal taxable year, which, under Section 441, Title 26, U.S.Code, can be the period of the short-period return. In this case, Hoover's federal taxable year was never the twelve-month period ending December 31 of the year prior to the tax year, one alternative presented Hoover under the commissioner's rule. A rule that is contrary to statute is invalid. *Kroger Grocery & Baking Co. v. Glander* (1948), 149 Ohio St. 120, 36 O.O. 471, 77 N.E.2d 921.

Accordingly, we affirm that part of the BTA's decision that denied investment tax credit for property purchased by Mansfield and Rogate from January 1, 1978, through July 31, 1978. We reverse the remainder of the decision.

*Decision affirmed in part*
*and reversed in part.*


MOYER, C.J., SWEENEY, HOLMES, WRIGHT and H. BROWN, JJ., concur.

DOUGLAS and RESNICK, JJ., concur in part and dissent in part.

DOUGLAS, J., concurring in part and dissenting in part. I concur in part and dissent in part. I would affirm the BTA in all respects.

RESNICK, J., concurs in the foregoing opinion.