**KELLY, Appellee,**

v.

**ACCOUNTANCY BOARD OF OHIO, Appellant.**

[Cite as *Kelly v. Accountancy Bd. of Ohio* (1993), 88 Ohio App.3d 453.]

Court of Appeals of Ohio,
Franklin County.

No. 93AP–135.

Decided June 30, 1993.

*Bradley, Topper & Farris* and *Philip R. Bradley,* for appellee.

*Lee I. Fisher,* Attorney General, and *Michael W. Gleespen,* Assistant Attorney General, for appellant.

PEGGY BRYANT, Presiding Judge.

Appellant, Accountancy Board of Ohio ("board"), appeals from a judgment of the Franklin County Court of Common Pleas overturning the board's administrative order suspending appellee, David A. Kelly, from the practice of accountancy for one year.

Kelly was employed as a certified public accountant by the accounting firm Arthur Young & Co. ("the firm").[1] In the fall of 1986, Kelly participated in the audit of one of the firm's clients, and determined during the course of the audit that the client had committed tax fraud.

In 1987, the firm fired Kelly. The firm subsequently sued Kelly for his alleged breach of a covenant not to compete with the firm following his termination. On January 25, 1990, during the course of that lawsuit, Kelly's counsel deposed Timothy McCord, an employee of the firm who also participated in the fall 1986 audit. Kelly's counsel questioned McCord during the deposition about the activities Kelly thought were fraudulent, and in asking the questions, revealed the name of the client which had allegedly committed the tax fraud. No objection was raised to disclosure of the client's identity and a transcript of the deposition was later filed with the clerk of courts.

In February or March 1990, without the client's consent, Kelly reported the alleged tax fraud to the Internal Revenue Service ("IRS") and provided the IRS with a transcript of McCord's deposition to support his allegations. The firm filed a formal complaint with the board on January 14, 1991, alleging that Kelly had improperly disclosed confidential client information to a third party in violation of Ohio Adm.Code 4701–11–02(A). The board conducted a disciplinary hearing on the matter on April 29, 1991, and subsequently issued an order on August 16, 1991 suspending Kelly's permit to practice accounting in Ohio for one year.

Kelly appealed the board's decision to the Franklin County Court of Common Pleas. The case was heard by a court-appointed referee who, concluding that the board's order was contrary to the law, recommended that the board's order be reversed. The trial court adopted the referee's report and entered judgment reversing the board's order. The board appeals therefrom, assigning the following errors:

"I. The common pleas court failed to recognize the distinction between 'reporting' a felony pursuant to R.C. Section 2921.22, and committing acts which

---

1. Arthur Young & Co. has since merged with another large accounting firm, Ernst & Whinney, to become Ernst & Young.

violate the provisions against disclosure of confidential information under O.R.C. Section 4701.16 and O.A.C. 4701–11–02.

"II. The common pleas court failed to properly determine that the order of the accountancy board suspending appellee was supported by reliable, probative, and substantial evidence."

In its first assignment of error, the board alleges that the trial court erred in reversing the board's order because the court incorrectly interpreted the term "report" as it is used in R.C. 2921.22; that Kelly breached his duty of confidentiality under Ohio Adm.Code 4701–11–02(A) because of the manner in which Kelly provided the IRS the information; and that the board thus properly could sanction Kelly pursuant to its powers under R.C. 4701.16(A).

■ R.C. 2921.22(A) provides that "[n]o person, knowing that a felony has been or is being committed, shall knowingly fail to *report* such information to law enforcement authorities." (Emphasis added.)[2] R.C. 2921.22(G) protects an individual who makes such a "disclosure of information" from any liability or recrimination in the event the disclosure would result in breach of a privilege or confidence. As a certified public accountant licensed to practice in Ohio, however, Kelly is also expected to comply with ethical regulations the board promulgates governing the practice of accountancy in Ohio. See R.C. 4701.03 (giving the board the authority to adopt rules of professional conduct regulating the practice of public accounting). Under Ohio Adm.Code 4701–11–02(A), "[a] certified public accountant or public accountant shall not disclose any confidential information obtained in the course of a professional engagement except with the consent of the client." Accord *Wagenheim v. Alexander Grant & Co.* (1983), 19 Ohio App.3d 7, 12, 19 OBR 71, 76, 482 N.E.2d 955, 962.

■ Administrative agencies, such as the board, possess rule-making powers pursuant to a statutory delegation of power; since administrative rules are made pursuant to a statutory delegation of authority, a rule which conflicts with a statute is invalid. *Athens Home Telephone Co. v. Peck* (1953), 158 Ohio St. 557, 49 O.O. 474, 110 N.E.2d 571; *Hoover Universal, Inc. v. Limbach* (1991), 61 Ohio St.3d 563, 575 N.E.2d 811. The board acknowledges that Kelly's duty to report a felony únder R.C. 2921.22(A) prevails over his duty of confidentiality under Ohio Adm.Code 4701–11–02(A) in the event of a conflict, but contends that the trial

---

2. The timing of both Kelly's "reporting" to the IRS and the firm's complaint before the board suggests strongly that the statute and rule are being used as tools to further the positions of Kelly and his former employer in their ongoing litigation. Nonetheless, the issues raised by the assigned errors must be addressed. The board, however, has not asserted that Kelly's delay in "reporting" the alleged tax fraud is tantamount to not reporting it, and thus we do not address that issue.

court erred in failing to interpret restrictively the term "report," as it is used in R.C. 2921.22, so as to avoid a conflict between the two provisions. Relying on *In re Stichtenoth* (1980), 67 Ohio App.2d 108, 21 O.O.3d 420, 425 N.E.2d 957, and R.C. 1.51, the board suggests that the apparent conflict between R.C. 2921.22 and the board's rule can be resolved by drawing a distinction between notification of law enforcement officials and participation in a criminal investigation, claiming that "reporting" only encompasses notification. Neither authority supports the board's contentions.

In *Stichtenoth*, a teen who observed a stabbing in a parking lot and who thereafter requested a desk clerk and another individual at an adjacent skating rink to notify the police was found to have satisfied his duty to "report" a felony under R.C. 2921.22, despite his later refusing to cooperate with the police in an investigation of the incident. Although the *Stichtenoth* court found the teen's minimal actions adequate to satisfy the statute, the court did not state that "reporting" was limited to such minimal actions or that "reporting" precluded more extensive cooperation with law enforcement authorities.

■ Further, regarding the board's reliance on R.C. 1.51, the present case involves a potential conflict between a statute and an administrative regulation, rather than the situation normally contemplated by R.C. 1.51 in which two statutes conflict. The rule of statutory interpretation in R.C. 1.51 codifies a long-standing judicial policy disfavoring the implied repeal of one statute by another, see *Cincinnati v. Thomas Soft Ice Cream* (1977), 52 Ohio St.2d 76, 79, 6 O.O.3d 277, 279, 369 N.E.2d 778, 780, and generally reflects a presumption that the legislature, in enacting a statute, is aware of existing law on a particular subject and intends to create legislation that is consistent with existing statutes. Cf. *Scheu v. State* (1910), 83 Ohio St. 146, 157–158, 93 N.E. 969, 972. By contrast, administrative rules and regulations are not created directly by the legislature, but are promulgated by administrative agencies pursuant to a statutory delegation of authority. Because administrative agencies possess only such rule-making powers as are delegated to them by statute, an administrative rule which conflicts with a valid, existing statute is invalid. *Athens Home Telephone, supra; Hoover Universal, supra.* Given the unequal status of administrative regulations and statutes under the law, the board has directed us to no authority, nor have we found any, which requires Ohio courts to place an administrative rule on equal footing with a statute when deciding whether a statute potentially conflicts with an administrative rule. In the absence of such authority, we interpret R.C. 2921.22 using traditional rules of statutory interpretation.

■ A court interpreting a statute must first look to the language of the statute to determine legislative intent, and if that inquiry reveals that the statute conveys meaning which is clear, unequivocal and definite, interpretive effort is at

an end, and the statute must be applied accordingly. *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 574 N.E.2d 457. Courts should give effect to the words of the statute and should not modify an unambiguous statute by deleting words used or inserting words not used. *Id.* Words used in statutes must be given their plain and ordinary meaning, unless legislative intent indicates otherwise. *Union Rural Elec. Coop., Inc. v. Pub. Util. Comm.* (1990), 52 Ohio St.3d 78, 555 N.E.2d 641; *John Ken Alzheimer's Ctr. v. Ohio Certificate of Need Review Bd.* (1989), 65 Ohio App.3d 134, 583 N.E.2d 337. Finally, where a potential conflict exists between an administrative rule and a statute, an administrative rule is not inconsistent with a statute unless the rule contravenes or is in derogation of some express provision of the statute. *McAninch v. Crumbley* (1981), 65 Ohio St.2d 31, 34, 19 O.O.3d 225, 226–227, 417 N.E.2d 1252, 1255.

Under the foregoing parameters, the language of R.C. 2921.22 unambiguously reveals an intent on the part of the legislature to encourage the reporting of felonies and to prohibit recrimination against individuals who make such required disclosures. A construction of the statute which facilitates the reporting of felonies is therefore preferred over one which creates unnecessary impediments to reporting. Given this clear expression of the legislative intent, several problems exist with the board's proposed interpretation of R.C. 2921.22(A)'s reporting requirements.

Initially, the board's restrictive interpretation of the reporting requirement fails to give proper deference to R.C. 2921.22(G)'s explicit protection against recrimination for reporting felonies, which indicates that even if Kelly violated a confidentiality duty in disclosing information to the IRS, such disclosures were protected against recrimination.

Indeed, the board's restrictive interpretation of "reporting" would require us to adopt the inconsistent position that in the same statutory section the legislature intended to provide broad immunities against recrimination for individuals who disclose confidential, or even privileged information, in order to encourage the reporting felonies, but at the same time intended to restrict severely the type of conduct that qualifies for such protection. Had the legislature intended R.C. 2921.22(G)'s protections to be applied so narrowly it could have expressly placed such limitations in the statutory language itself. The statutory language, if anything, suggests a contrary intent. In describing R.C. 2921.22(G)'s protections against recrimination, the legislature used the broadly worded phrase "disclosure of information" rather than the word "report." Although "disclosure of information" is not defined in the statute, an ordinary understanding of that phrase would not be limited solely to notifying authorities that a felony has occurred; rather, the phrase could encompass a range of disclosure acts reasonably related to the reporting of a felony, including inform-

ing the IRS of an alleged tax fraud and providing it with documentation aimed at substantiating such a claim.

Next, as a practical matter, a description of the facts surrounding potentially illegal activities is often necessary for law enforcement officials to determine whether certain activities in fact are illegal, especially in so-called "white-collar" crime situations, like tax fraud, where the elements of the crime can be technical. The restrictive type of disclosure the board suggests potentially could limit the effectiveness of the reporting requirements established by R.C. 2921.22 in such cases because law enforcement authorities would be unable to assess the legitimacy of any such report, absent extensive investigation.

■ Finally, the board's suggested interpretation of R.C. 2921.22's reporting and immunity provisions would place accountants who observe illegal activity in the precarious position of having to disclose enough information to satisfy R.C. 2921.22(A)'s reporting requirements, while at the same time having to guard against running afoul of Ohio Adm.Code 4701–11–02(A)'s confidentiality requirements if too much information is disclosed. The uncertainty created by the board's suggested interpretation could ultimately work against reporting felonies. The public's interest in having felonies reported is best served by ensuring that accountants can disclose information reasonably related to the reporting of a felony without fear that they will be subjected to the loss of a professional license.

■ However, we need not resolve the board's contentions, as the present case ultimately is not resolved by an interpretation of R.C. 2921.22, but by the nature of the information Kelly disclosed to the IRS. Under Ohio Adm.Code 4701–11–02(A), accountants are only prohibited from revealing *confidential* client information. Information which can be readily obtained from the public records is not confidential.

■ The record indicates that a copy of Timothy McCord's deposition was filed with the Franklin County Clerk of Courts, thereby making the deposition and its contents a matter of public record. When Kelly later provided a copy of the McCord deposition to the IRS to substantiate the reported felony of tax fraud, he did not reveal confidential client information but simply provided the IRS with information generally available in the public records. Thus, on the record before us, Kelly did not violate any duty of confidentiality.

Based on the foregoing, the board's first assignment of error is overruled.

In its second assignment of error, the board argues that the common pleas court erred in failing to find the board's order was supported by reliable, probative and substantial evidence. The board contends that evidence was presented at its hearing which supported its decision to suspend Kelly's license.

Under R.C. 119.12, the board's order must pass a two-prong test in order to be affirmed: first, the order must be supported by reliable, probative and substantial evidence; second, the order must be in accordance with the law. The board's arguments under the second assignment of error generally concern the evidentiary basis for its decision. In the present case, the common pleas court reversed the board's order not on evidentiary grounds, but because the board's order was not in accordance with the law. Since the board's arguments address the evidentiary basis for its decision, those arguments are inapposite and are not well taken.

Accordingly, the board's second assignment of error is overruled.

Having overruled both of the board's assignments of error, we affirm the decision of the common pleas court.

*Judgment affirmed.*

TYACK and STRAUSBAUGH, JJ., concur.

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.