MUCZYK et al., Appellants,

v.

CLEVELAND STATE UNIVERSITY, Appellee.

[Cite as *Muczyk v. Cleveland State Univ.* (1996), 111 Ohio App.3d 167.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69207.

Decided May 20, 1996.

*McCarthy, Lebit, Crystal & Haiman Co., L.P.A., David A. Schaeffer* and *Jeffrey A. Huth,* for appellants.

*Kahn, Kleinman, Yanowitz & Arnson Co., L.P.A., Robert J. Valerian, Michael H. Diamant* and *Matthew S. Friedman; Michael D. Stovsky,* for appellee.

SPELLACY, Chief Judge.

Plaintiffs-appellants Jan Muczyk, Dolores Lairet, Eric K. Sander and Ronald W. Tyrrell appeal the finding of the trial court that defendant-appellee Cleveland State University ("CSU") was obligated to offer participation in an Early Retirement Incentive Plan to five percent of the eligible faculty as of January 1, 1993.

Appellants assign the following errors for review:

"I.   The trial court erred in determining that Ohio Revised Code § 3307.35 did not require CSU to offer participation in its ERIP to an additional five percent of its STRS members, when that plan, which ran from July 1, 1993 through June 30, 1994, encompassed two calendar years.

"II.   The trial court erred in refusing to require CSU to comply with Ohio Revised Code § 3307.35 simply because it believed it would be unreasonable to require CSU to do so.

Finding the appeal to lack merit, the judgment of the trial court is affirmed.

## I

On January 19, 1993, CSU adopted an Early Retirement Incentive Plan which it intended to limit to five percent of its eligible employees. CSU determined that five percent of its eligible employees would be forty-nine employees. The plan was to be in effect from July 1, 1993 to June 30, 1994. Employees were to apply for participation in the plan between February 1, 1993 and April 30, 1993. About one hundred twenty employees, including appellants, responded by submitting applications. Employees were offered participation based on years of service. Offers were made to fifty-nine employees in all, as ten declined to participate. Appellants were not offered participation as they were too low on the list for eligibility.

Some employees at CSU questioned whether CSU was required by statute to offer participation to additional employees as the term of the plan encompassed two different years. CSU checked with a representative of the State Teachers Retirement System who orally indicated that the employer's plan year was the calendar year regardless of the months used. The representative refused to put his remarks in writing.

On December 22, 1993, appellants filed a complaint for declaratory judgment and permanent mandatory injunction. Appellants asked the trial court to declare that the term "calendar year" as used in R.C. 3307.35 denotes a period beginning on January 1 and ending on December 31 of the same year. Appellants also

wanted a declaration that the retirement plan requires CSU to offer appellants participation.

The action was tried on the briefs. The trial court ruled that CSU was obligated to offer participation in the plan to five percent of its eligible faculty as of January 1, 1993, and interpreted the statute to mean the plan year and not a period from January 1 to December 31.

## II

In their first assignment of error, appellants contend that the trial court erred in determining that CSU was not required to offer participation in its Early Retirement Incentive Plan to an additional five percent of its employees. Appellants base their argument on their interpretation of the term "calendar year" to mean a period from January 1 to December 31. Because CSU's plan ran from July 1, 1993 to June 30, 1994, it encompassed two calendar years requiring offers of participation to additional employees.

The purpose of statutory construction is to ascertain and give effect to the intent of the legislature. *Featzka v. Millcraft Paper Co.* (1980), 62 Ohio St.2d 245, 247, 16 O.O.3d 280, 281–282, 405 N.E.2d 264, 265–266. To ascertain the legislative intent, courts rely upon ordinary principles of statutory construction. *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 573 N.E.2d 77. A court must first look at the language of the statute and if the statute conveys a meaning which is clear, unequivocal and definite, there is no need to apply rules of statutory interpretation. *Id.* Courts should give effect to the words of the statute and should not modify an unambiguous statute by deleting words used or inserting words not used. *Kelly v. Accountancy Bd. of Ohio* (1993), 88 Ohio App.3d 453, 459, 624 N.E.2d 292, 296. In the absence of clear legislative intent to the contrary, words and phrases in a statute shall be read in context and construed according to their plain, ordinary meaning. *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St.3d 135, 137, 522 N.E.2d 477, 479–480.

R.C. 3307.35 governs retirement incentive plans for members of the State Teachers Retirement System. It provides in part:

"An employer may establish a retirement incentive plan for its employees who are members of the state teachers retirement system. The plan shall provide for purchase by the employer of service credit for eligible employees who choose to participate in the plan and for payment by the employer of the entire cost of such service credit. A plan established under this section shall remain in effect until terminated by the employer, except that, once established, the plan must remain in effect for at least one year.

"An employee who is a member of the state teachers retirement system shall be eligible to participate in a retirement incentive plan if he has attained age fifty and he agrees to retire and retires under section 3307.38 of the Revised Code effective within ninety days after receiving notice from the state teachers retirement system that service credit has been purchased for him under this section.

"Participation in the plan shall be available to all eligible employees except that the employer may limit the number of persons for whom it purchases credit in any calendar year to a specified percentage of its employees who are members of the state teachers retirement system on the first day of January of that year. The percentage shall not be less than five per cent of such employees. If participation is limited, employees with a greater length of service with the employer have the right to elect to have credit purchased before employees with a lesser length of service with the employer."

The definitional section of R.C. Chapter 3307 defines "year" as beginning the first day of July and ending the thirtieth day of June. R.C. 3307.01(O). The term "calendar year" is not defined under R.C. 3307.01. Appellants argue that the common, everyday usage of "calendar year" defines a period from January 1 to December 31. "Calendar year" is defined in Webster's Third New International Dictionary (1986) 316:

"1: a period of a year beginning and ending with the dates which are conventionally accepted as marking the beginning and end of a numbered year (as Jan. 1 and Dec. 31 in the Gregorian calendar) 2: a period of time equal in length to that of the year in the calendar conventionally in use (as in the Gregorian calendar 365 days or when a Feb. 29 is included 366 days)."

There are two everyday meanings of "calendar year." The first supports appellants' definition of the term. The second defines a period of time denoting twelve consecutive months.

The first part of R.C. 3307.35 states that a retirement incentive plan will remain in effect until ended by the employer. The plan cannot be implemented for a term of less than one year. The part of R.C. 3307.35 in dispute here allows participation in a plan to be limited to a percentage of eligible employees as long as the percentage is equal to or exceeds five percent of eligible employees. The statute states that the employer may impose this limitation upon the number of persons for whom it purchases credit in any calendar year. Under appellants' reading of the statute, CSU would be required to offer participation to an additional five percent of its eligible employees as its plan year ran from July 1, 1993 to June 30, 1994. Pursuant to appellants' argument, the only way an employer could limit participation to five percent of eligible employees would be to begin its plan on January 1.

.

Appellants' interpretation of R.C. 3307.35 would impose a Draconian result on educational institutions. Employers would be permitted to limit participation only by using plan years which begin on January 1. CSU instituted a plan under which it intended to limit participation to five percent. Appellants' reading of the statute would result in nearly doubling that figure.

This result would not comport with the intent of the legislature in enacting R.C. 3307.35. It would make it difficult for employers to take advantage of the limiting provision. Any employer desiring to limit participation to five percent of its eligible employees would be forced to choose a January 1 date to implement its plan regardless of any other concerns or considerations.

The definition of the "calendar year" which appears to give effect to the legislative intent is to read the term as meaning a period of twelve consecutive months. This also is a plain and ordinary meaning of "calendar year." Under R.C. 3307.35, a plan offered to all eligible employees remains in effect until terminated by the employer. However, the paragraph in question permits an employer to limit the number of eligible employees' participation in the plan. Such a plan may be in effect only for a calendar year or twelve consecutive months. As CSU's plan was for a period from July 1 to June 30, it encompassed a term of twelve consecutive months or a calendar year and complies with the statute.

The trial court adopted a definition of "calendar year" to be the same as the employer's plan year. This court adopts a different definition as being a term of twelve consecutive months. Therefore the judgment is affirmed but on different reasoning.

Appellants' first assignment of error is overruled.

### III

In their second assignment of error, appellants argue that the trial court erred in refusing to require CSU to comply with R.C. 3307.35 because it believed it would be unreasonable to do so. Because of the resolution of the first assignment of error, the second assignment of error is moot.

*Judgment affirmed.*

McMONAGLE, J., concurs separately.

O'DONNELL, J., dissents.

McMONAGLE, Judge, concurring.

The majority opinion looks to ordinary principles of statutory construction and an alternative definition of the term "calendar year" in order to conclude that

Cleveland State University may establish an Early Retirement Incentive Program ("ERIP") which does not run from January 1 to December 31, while still taking advantage of the five-percent employee participation limit. While I accept and agree with both this reasoning and this result as proper, I believe there are additional reasonable ways to reach the correct result in this matter.

First of all, it should be noted that appellants rely heavily on the cases of *Fincher v. Canton City School Dist. Bd. of Edn.* (1991), 62 Ohio St.3d 228, 581 N.E.2d 523, and *Brecksville–Broadview Hts. Edn. Assn. v. Brecksville–Broadview Hts Bd. of Edn.* (Mar. 12, 1992), Cuyahoga App. No. 60143, unreported, 1992 WL 47240. These cases, however, do *not* stand for the proposition that an ERIP must run for a "calendar year." In fact, the issues in *Fincher* and *Brecksville–Broadview Hts.* concerned the *application* period for an ERIP, *not* the time period of the ERIP itself. The *Fincher* court held that "the requirement in R.C. 3307.35 that a retirement incentive plan 'remain in effect for at least one year' does not preclude the establishment of an application period for such a plan that expires less than a year after the plan is adopted." *Id.*, 62 Ohio St.3d at 229, 581 N.E.2d at 524, syllabus. The court in *Brecksville–Broadview Hts.* took exactly the same approach.

Another fact about these two cases which should be pointed out is the difference in the time periods of each ERIP. The ERIP in *Fincher* ran from January 1, 1989 to December 31, 1989—one "calendar year." However, the ERIP in *Brecksville–Broadview Hts.* ran from March 18, 1988 to March 17, 1989, encompassing two "calendar years." The *Brecksville–Broadview Hts.* court even acknowledged, in footnote 1, that the "effective period of the plan was later extended to April 3, 1989." Neither court commented on the time period of the ERIPs at issue. *Both* ERIPs were upheld; therefore, it can be concluded that it is not necessary for a board to structure an ERIP to run January 1 to December 31 in order to comply with R.C. 3307.35.

Yet another basis for affirming the trial court's judgment is suggested by the court in *Fincher:*

"In interpreting the meaning of a phrase within a statute, this court is bound by legislative direction to presume that the *entire* statute is intended to be effective. R.C. 1.47(B). We also must presume that the statute is intended to provide a just and reasonable result that is feasible of execution. R.C. 1.47(C) and (D)." (Emphasis *sic.*) *Id.*, 62 Ohio St.3d at 231, 581 N.E.2d at 525.

The trial court in the case *sub judice* looked to *Prem v. Cox* (1983), 2 Ohio St.3d 149, 152, 2 OBR 694, 697, 443 N.E.2d 511, 514, in which the court stated:

" 'The General Assembly will not be presumed to have intended to enact a law producing unreasonable or absurd consequences. It is the duty of the courts, if

the language of a statute fairly permits or unless restrained by the clear language thereof, so to construe the statute as to avoid such a result.'" Quoting *Canton v. Imperial Bowling Lanes* (1968), 16 Ohio St.2d 47, 45 O.O.2d 327, 242 N.E.2d 566, paragraph four of the syllabus.

So, both *Fincher* and *Prem* suggest reading a statute in order to reach a *reasonable* result. In light of this directive, two alternatives should be examined:

### Alternative 1

Give the term "calendar year" its plain meaning,
*i.e.,* January 1 to December 31

In analyzing this alternative, it is necessary to look at the language of the statute. Paragraph one of R.C. 3307.35 states, in part:

"A plan established under this section shall remain in effect until terminated by the employer, except that, once established, the plan must remain in effect for at least one *year.*" (Emphasis added.)

The term "year" is defined, for purposes of R.C. Chapter 3307, in R.C. 3307.01(O) as "the year beginning the first day of July and ending with the thirtieth day of June next following, except that, for determining final average salary, 'year' may mean the contract year."

Paragraph three of R.C. 3307.35 is where the term "calendar year" comes in:

"Participation in the plan shall be available to all eligible employees except that the employer may limit the number of persons for whom it purchases credit in any *calendar year* to a specified percentage of its employees who are members of the state teachers retirement system on the first day of January of that year. The percentage shall not be less than five per cent of such employees." (Emphasis added.)

Giving the term "calendar year" its plain meaning, January 1 to December 31, and the term "year" its meaning as set out in the statute itself, July 1 to June 30, leads to the dilemma of whether a school board is supposed to comply with paragraph one of R.C. 3307.35, which directs it to establish a plan for at least one "year," which is defined by the statute to mean July 1 to June 30, or to comply with paragraph three, which uses the term "calendar year," a term ordinarily construed to mean January 1 to December 31. A board could never establish a plan which remained in effect for at least one "year" without concurrently spanning two "calendar years." A board must, therefore, choose between paragraph one and paragraph three when setting up an ERIP.

Thus, giving "calendar year" its plain meaning does not appear to be a viable alternative as it produces an "absurd" result, abhorred by the *Prem* court, 2 Ohio

St.3d at 152, 2 OBR at 697, 443 N.E.2d at 514, and it does not lead to a "just and reasonable result that is *feasible of execution,*" as suggested by the *Fincher* court. (Emphasis added.) 62 Ohio St.3d at 231, 581 N.E.2d at 525.

Alternative 2

Take the word "calendar" out of the statute

Courts should give effect to the words of the statute and should not modify an unambiguous statute by deleting words used or inserting words not used. *Kelly v. Accountancy Bd. of Ohio* (1993), 88 Ohio App.3d 453, 459, 624 N.E.2d 292, 296. This is an ordinary principle of statutory construction. However, as indicated in the above discussion of Alternative 1, the statute at issue here is not "unambiguous." This alternative must, therefore, be examined.

Following this alternative, the term "year" is left unmodified by the word "calendar." The statutory definition of "year" can thus be applied, and paragraphs one and three of R.C. 3307.35 are compatible. This alternative allows a board to comply with paragraph one as well as take advantage of the five-percent participation limit of paragraph three.

Striking the word "calendar" makes the most sense and avoids an unreasonable or absurd result. It is also feasible of execution, as it eliminates the prospect of a school board having to choose with which part of the statute to comply. Finally, it clears up any ambiguity in the statute resulting from the conflict presented between paragraphs one and three.

An ERIP may be set up by a school board in order to induce the early retirement of some of its older employees. It should be kept in mind that an ERIP is *voluntary* in nature; a school board is free to *choose* to adopt an ERIP just as it is free to *decline* one. Participation on the part of employees is also voluntary. Mandating a January 1 starting date in order to take advantage of the five-percent participation limits the voluntary nature of an ERIP.

This final argument is a practical one. It is reasonable that a board would prefer to have its ERIP commence on July 1. This is the time when a school year has just ended and a teacher, if choosing to retire, would most likely *want* to retire. The other alternative, beginning an ERIP on January 1, does not make practical sense. January 1 is in the middle of a school year, which is not a time when a teacher would usually want to retire. A board, when structuring its ERIP, would naturally have in mind that the school year would end on or about June 30. If a teacher were to choose to participate in an ERIP, it is unlikely that he or she would want to wait until January 1 of the *next* year to choose to retire; therefore, a July 1 starting date is the common-sense approach.

There are, therefore, four additional reasons why the trial court's judgment should be affirmed. First, *Fincher* and *Brecksville–Broadview Hts. do not hold that an ERIP must run for a "calendar year"*; rather, these cases hold that an *application period* for an ERIP may be open for a period of less than one year. Second, *Fincher*, as well as *Prem v. Cox*, suggests that a statute should be read to reach a reasonable, not an absurd, result. The way to reach a reasonable result in interpreting R.C. 3307.35 is to take the word "calendar" out of the statute. Then, paragraphs one and three do not conflict and the statute is no longer ambiguous. Third, an ERIP is *voluntary* in nature; it is not mandatory that a school board set up an ERIP for its employees. A five-percent participation limit is offered to make the plan attractive to the school boards. Locking a board into a mandatory starting date for an ERIP, *i.e.*, "start on January 1 or no 5% limit is available," appears to circumvent the voluntary nature of the program. Finally, and as more of a practical approach, July 1 is near the end of a school year. A board would naturally want to begin its ERIP at this time, rather than on January 1, which is in the middle of a school year.

These additional reasons, therefore, compel affirming the trial court's judgment in this matter.

O'DONNELL, Judge, dissenting.

I respectfully dissent.

This case appears to involve a singular determination of what the term "calendar year" means as used in R.C. 3307.35. While I agree that changes in the statute could make it easier to understand, nonetheless, our function as a judiciary is to interpret the law as written, not rewrite it or change it to reach a desired result. In *Fincher v. Canton City School Dist. Bd. of Edn.* (1991), 62 Ohio St.3d 228, 581 N.E.2d 523, Justice Wright stated the following:

"In interpreting the meaning of a phrase within a statute, this court is bound by legislative direction to presume that the *entire* statute is intended to be effective. R.C. 1.47(B). We also must presume that the statute is intended to provide a just and reasonable result that is feasible of execution. R.C. 1.47(C) and (D). The interpretation we adopt must adhere to those abiding and basic principles of statutory construction." (Emphasis added.)

In that case, as here, the court considered R.C. 3307.35 and determined that the statutory requirement that a retirement incentive plan remain in effect for at least one year did not preclude establishing an application period of less than a year.

The feature of this case which generates the controversy, however, is not the language of the statute, but rather, the action by appellee Cleveland State

University in selecting to establish a retirement incentive plan for its employees which began on July 1, 1993 and ending on June 30, 1994. In taking this action, instead of adopting a January 1 to December 31 calendar year for its plan as had been done by the Canton City Board of Education in *Fincher, supra,* the university adopted a plan which spanned two separate calendar years and thereby obligated itself to offer participation to an additional five percent of its eligible employees. The *in terrorem* arguments of counsel about financial cost to the university do not change the fact that the plan year spans two separate calendar years. If indeed it appears more logical to adopt a plan year to coincide with the end of the academic year, then efforts could be made to have the legislature reconsider its choice of the term "calendar year" as it is used in R.C. 3307.35. That, however, is not a judicial function.

The plain meaning of the term, "calendar year" has been interpreted in *State ex rel. Gareau v. Stillman* (1969), 18 Ohio St.2d 63, 47 O.O.2d 187, 247 N.E.2d 461, an election law case, to mean the period from January 1 through December 31. See, also, Black's Law Dictionary (6 Ed.1990) 204.

For the foregoing reasons, I would reverse the judgment of the trial court and order appellee to offer participation in the retirement incentive plan to an additional five percent of eligible employees who had made timely application.