[Cite as *State v. Michael*, 2014-Ohio-4535.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO.  1-14-11

      v.

BLAINE E. MICHAEL,               O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Lima Municipal Court
Trial Court No. 13TRC03666A-B

Judgment Affirmed

Date of Decision:   October 14, 2014

APPEARANCES:

    *Andrew R. Bucher* **for Appellant**

    *John R. Payne*  **for Appellee**

Case No. 1-14-11

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Blaine Michael ("Michael") brings this appeal from the judgment of the Lima Municipal Court of Allen County, Ohio, finding him guilty of operation of a motor vehicle while under the influence (OVI). For the reasons that follow, we affirm the trial court's judgment.

{¶2} On April 8, 2013, Michael was charged with two counts of OVI: (1) operation of a motor vehicle while under the influence in violation of R.C. 4511.19(A)(1)(a); and (2) operation of a motor vehicle with a prohibited concentration of alcohol in his breath, in violation of R.C. 4511.19(A)(1)(d). He was also charged with failure to keep an assured clear distance ahead, in violation of R.C. 4511.21(A). The charges resulted from an accident-related traffic stop, arrest, and a breath alcohol content test administered by Deputy Bruce Clayton ("Deputy Clayton") on the Intoxilyzer 8000, which occurred on April 7, 2013.

{¶3} On June 28, 2013, Michael filed a motion to suppress, requesting suppression of multiple items of evidence, including results of the field sobriety tests, breath alcohol content test, observations and opinions of the police officer, and statements taken from or made by Michael. (R. at 16.) He requested a hearing on the motion.

{¶4} The suppression hearing took place on September 16, 2013. Defense counsel explained that Michael was "significantly limiting" the scope of his

- 2 -

motion to suppress. (Hr'g Tr. ("Tr.") at 1:10-12, Sept. 16, 2013.) Therefore, Michael asked to suppress only the breath alcohol content test on the basis that there exist "no testing regulations in place for the officer" in the Ohio Administrative Code and that Deputy Clayton was not properly qualified to operate the Intoxilyzer 8000 on the date of the test. (*Id.* at 2-4.) Michael waived all other suppression issues. (*Id.* at 2:10-16, *see id.* at 6:17-19.) The trial court denied Michael's motion to suppress.

{¶5} Following the trial court's denial of his motion to suppress, Michael entered a plea of no contest and was found guilty of operation of vehicle with a prohibited concentration of alcohol in his breath, in violation of R.C. 4511.19(A)(1)(d). The remaining charges have been dismissed and are not at issue on appeal. The trial court sentenced Michael to five days in the Allen County Justice Center, suspended upon conditions; a fine of $500.00; and a suspension of his driver's license for a period of 365 days. The sentence has been stayed pending this appeal.

{¶6} Michael asserts one assignment of error for our review.

**THE TRIAL COURT ERRED WHEN IT DETERMINED THE OFFICER HAD COMPLIED WITH THE REQUIREMNTS [sic] OF OAC 3701-53-08.**

Case No. 1-14-11

*Summary of the Argument on Appeal*

**{¶7}** On appeal Michael alleges that his breath test results should have been excluded due to the fact that Deputy Clayton was not qualified to perform the test.[1] He relies on Ohio Adm.Code 3701-53-08, which states, in relevant part:

> Individuals desiring to function as operators who apply for or are issued an operator access card under paragraph (C) of rule 3701-53-09 of the Administrative Code, *shall be subject to a proficiency examination once per calendar year* conducted at the director's discretion.[2]

(Emphasis added.) Ohio Adm.Code 3701-53-08(D).

**{¶8}** The evidence submitted in the trial court showed that Deputy Clayton's then-most-recent proficiency examination was completed on February 16, 2012. (Tr., Ex. C.) Michael asserts that, because more than twelve months had passed since that examination as of the date of his breath test on April 7, 2013, Deputy Clayton's operator access card was invalid. He concludes that as a result of the expired operator access card, Deputy Clayton was not qualified to perform the test.

**{¶9}** This logic is based on other sections of the Ohio Administrative Code. In particular, Ohio Adm.Code 3701-53-07 establishes the qualifications of personnel performing a breath alcohol content test and requires the test to be

---

[1] Michael does not challenge the trial court's denial of his motion to suppress for lack of "testing regulations" in the Ohio Administrative Code, which was the other issue argued in the trial court. (*See* Tr. at 2:9-24.)

[2] Because the parties do not ask us to interpret the effect of the phrase "subject to," we express no opinion on whether this section requires the operators to *take* the proficiency examination or merely *be available for* such an examination whenever the director exercises its discretion.

- 4 -

performed by a "senior operator" or an "operator." Section 3701-53-09(D) and (E) requires that operators of the Intoxilyzer 8000 possess an "operator access card" and meet qualifications established by Ohio Adm.Code 3701-53-07 and 3701-53-08. Arguing that Deputy Clayton's failure to timely take the proficiency examination rendered his operator access card invalid and disqualified him from performing tests on the Intoxilyzer 8000, Michael claims that his breath test was not performed in compliance with the required regulations and its results should have been excluded.

{¶10} The State rejects Michael's contention that failure to comply with the once-per-calendar-year-proficiency-exam requirement automatically disqualifies an operator from performing breath tests on the Intoxilyzer 8000. (App'ee Br. at 11-12 (arguing that under Ohio Adm.Code 3701-53-09(E), "[p]ermits issued under paragraph (D) of this rule *shall not expire* unless revoked by the director * * * or are voluntarily surrendered." (Emphasis added.), and under Ohio Adm.Code 3701-53-10 "[t]he director of health *may* [rather than shall] deny, suspend or revoke the permit or operator access card of any permit holder or individual: * * * (B) Who fails to comply with any of the provisions of rules 3701-53-01 to 3701-53-09 of the Administrative Code." (Emphasis added.).) Because the State failed to raise this argument in the trial court, we do not address it here. *See State v. Peagler*, 76 Ohio St.3d 496, 501, 668 N.E.2d 489 (1996) ("A court of appeals

cannot consider the issue for the first time without the trial court having had an opportunity to address the issue.").

{¶11} Therefore, the sole issue before us is whether, in denying Michael's motion to suppress, the trial court properly found that Deputy Clayton satisfied the proficiency examination requirement of Ohio Adm.Code 3701-53-08(D).[3]

*Standard of Review*

{¶12} An appellate review of the trial court's decision on a motion to suppress involves a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Norman*, 136 Ohio App.3d 46, 51, 735 N.E.2d 953 (3d Dist.1999). We will accept the trial court's factual findings if they are supported by competent, credible evidence because the "evaluation of evidence and the credibility of witnesses" at the suppression hearing are issues for the trier of fact. *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992); *Burnside*, 2003-Ohio-5372, at ¶ 8; *Norman*, 136 Ohio App.3d at 51. But we must independently determine, without deference to the trial court, whether these factual findings satisfy the legal standard as a matter of law, because "the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review." *Norman*, 136 Ohio App.3d at 52; *Burnside*, 2003-Ohio-5372, at ¶ 8.

---

[3] We do not address the effect of an operator's failure to comply with this division of Ohio Adm.Code 3701-53-08, and whether it would warrant suppression.

{¶13} Since the facts relevant to this appeal are not in dispute, the issue before us presents a question of law and turns on the interpretation of the phrase "once per calendar year." *See Brennaman v. R.M.I. Co.*, 70 Ohio St.3d 460, 466, 639 N.E.2d 425 (1994) (holding that "[c]onstruction of a statute is not a question of fact but a question of law"); *Howell v. Ohio Dept. of Job & Family Servs.*, 7th Dist. Belmont No. 08 BE 25, 2009-Ohio-1510, ¶ 29 (exercising a de novo review for the "interpretation and application of an administrative code section" because it "presents a question of law"). We review this issue de novo.

*Interpretation of the Term "Calendar Year"*

{¶14} At the time Michael filed his motion to suppress, the relevant sections of the Ohio Adm.Code did not define the term "calendar year."[4] When a term in a statute or a regulation is not defined, the courts attempt to interpret the term and "arrive at the legislative intent." *Iams v. DaimlerChrysler Corp.*, 174 Ohio App.3d 537, 2007-Ohio-6709, 883 N.E.2d 466 (3d Dist.), ¶ 35, citing *Bailey v. Republic Engineered Steels, Inc.*, 91 Ohio St.3d 38, 39, 741 N.E.2d 121 (2001), *superseded by statute on other grounds*. If the language is clear and unambiguous, it must be applied as written. *Id.* But if the language is subject to multiple interpretations, it is ambiguous and courts turn to the legislative intent to ascertain its meaning. *Id.*; *State v. Siferd*, 151 Ohio App.3d 103, 2002-Ohio-6801, 783

---

[4] We note that one of the sections of the relevant Administrative Code Chapter 3701–53: Alcohol and Drug Testing; Permits for Personnel, has been recently amended by adding the definition of "calendar year." *See* Ohio Adm.Code 3701-53-04(C).

N.E.2d 591, ¶ 33. Michael asserts that the term "calendar year" is ambiguous, and that it is subject to two interpretations: (1) "twelve consecutive months," as defined by the 1-1-1 decision of the Eighth District Court of Appeals in *Muczyk v. Cleveland State Univ.*, 111 Ohio App.3d 167, 171, 675 N.E.2d 1283 (8th Dist.1996), or (2) "the period from January 1 to December 31 of any given year," as used by the trial court, which relied on the Ohio Supreme Court's decision in *State ex rel. Gareau v. Stillman*, 18 Ohio St.2d 63, 64, 247 N.E.2d 461 (1969). Michael urges us to follow the reasoning of the Eighth District Court of Appeals.

{¶15} Courts use the same rules of construction for interpreting statutes and administrative regulations. *See McFee v. Nursing Care Mgt. of Am., Inc.*, 126 Ohio St.3d 183, 2010-Ohio-2744, 931 N.E.2d 1069, ¶ 27. It is a well-settled law in Ohio that words in a statute or a regulation "should be construed in their ordinary and natural meaning, and be given the meaning ordinarily attributed to them unless a different intention appears in the statute." *Gareau*, 18 Ohio St.2d at 64; *accord State ex rel. Baroni v. Colletti*, 130 Ohio St.3d 208, 2011-Ohio-5351, 957 N.E.2d 13, ¶ 18, quoting *Morning View Care Ctr.–Fulton v. Ohio Dept. of Human Servs.*, 148 Ohio App.3d 518, 2002-Ohio-2878, 774 N.E.2d 300, ¶ 36 (" 'The interpretation of statutes and administrative rules should follow the principle that neither is to be construed in any way other than as the words demand.' ").

{¶16} Using these principles, the Ohio Supreme Court held that "calendar year" means "the period of time from January 1 through December 31." *Gareau*, 18 Ohio St.2d at 64 (rejecting a contention that "such phrase merely means the passage of 365 days"). Other Ohio courts followed this definition. *See State v. Patel*, 5th Dist. Stark No. 2012CA00190, 2013-Ohio-3300, ¶¶ 34-35 (analyzing a corresponding Section of Ohio Adm.Code, which concerns checks, controls, and certifications for alcohol and drug testing instruments, Ohio Adm.Code 3701-53-04); *Dilacqua v. Dilacqua*, 9th Dist. Summit No. 18244, 1997 WL 557337, *3 (Sept. 3, 1997), citing Black's Law Dictionary, Revised Fourth Edition; *Heuer v. Heuer*, 10th Dist. Franklin No. 92AP-1512, 1993 WL 220904, *5 (June 8, 1993); *Schon v. Natl. Tea Co.*, 19 Ohio App.2d 222, 224, 250 N.E.2d 890 (7th Dist.1969); *see also* 1996 Ohio Atty.Gen.Op. No. 2-159 (defining "calendar year" for purposes of R.C. 519.25 as the period of time from January 1 through December 31 and distinguishing it from the general term "year," which is "flexible in meaning with respect to the time when [the twelve consecutive months] should start and stop").

{¶17} We find that the Ohio Supreme Court's definition better fits the legislative intent than the definition adopted in the split decision[5] of the Eighth

---

[5] The separately concurring judge McMonagle recognized that the writing judge used an "alternative definition of the term 'calendar year' " instead of "its plain meaning, January 1 through December 31." *Muczyk*, 111 Ohio App.3d at 172-173 (McMonagle, J., concurring separately). Judge McMonagle concurred in the reasoning and the judgment because the plain meaning of the term was not a "viable alternative" in that case, as it would produce "absurd" results. *Id.* at 172, 174. The dissenting judge

District Court of Appeals in *Muczyk*, 111 Ohio App.3d 167. We offer several reasons for this conclusion. First, in 1969, the Ohio Supreme Court faced with a controversy "around the meaning of the phrase 'calendar year' as used in Section 3513.191, Revised Code," noted that the word "year" is general and "susceptible of different meanings," while the term "calendar year" is more specific and has "a definite and common meaning as to the beginning and ending of the 365-day period which constitutes a year." *Gareau*, 18 Ohio St.2d at 64-65. As if agreeing with the ambiguity in the word "year," the legislature enacted R.C. 1.44 in 1971, defining the term as "twelve consecutive months." The legislature did not define "calendar year."

{¶18} Second, the use of the term "calendar year" throughout the Revised Code unambiguously indicates that the term has an ordinary and natural meaning, which is the period from January 1 to December 31 of any given year. Without defining it specifically, the legislature follows the term "calendar year" with a number corresponding to the 365 or 366-day period of the Gregorian calendar. *See, e.g.*, R.C. 5751.53 (using specific terms "calendar year 2010," "calendar year 2011," "calendar year 2012," etc. in the Taxation Code); R.C. 5165.19 (using the term "calendar year 2003" in the context of Medicaid payments); R.C. 141.011

---

objected to the construction of the term "calendar year" in a manner contrary to its plain meaning, reasoning that "our function as a judiciary is to interpret the law as written, not rewrite it or change it to reach a desired result." *Id.* at 175-176 (O'Donnell, J., dissenting). This judge cited *Gareau*, 18 Ohio St.2d 63, and Black's Law Dictionary (6 Ed.1990) 204, which defined "calendar year" as "the period from January 1 through December 31." *Id.* at 176.

(using "calendar year 2001," "calendar years 2002 through 2006," and "calendar year 2007" to establish salaries of elective state officers).

{¶19} Third, the definition adopted by us is consistent with the most recent amendment in the Ohio Administrative Code. Section 3701-53-04, which concerns requirements for "Instrument checks, controls and certifications" of the machines used for alcohol and drug testing, recently defined a "calendar year" as "the period of twelve consecutive months, as indicated in section 1.44 of the Revised Code, *beginning on the first day of January, and ending on the thirty-first day of December*." Although Michael correctly asserts that this definition was not in place at the time of his breath test and should not be used to determine Deputy Clayton's compliance with the proficiency exam requirement, this recent amendment reveals the legislative purpose behind the Ohio Administrative Code's requirement that certain things be done every calendar year. Therefore, even if we do not use the recent amendment to define "calendar year" in Ohio Adm.Code 3701-53-08(D), it is further proof that the legislature intended to give the term its ordinary and natural meaning in Sections concerning Alcohol and Drug Testing.

{¶20} Fourth, other chapters of the Ohio Administrative Code define "calendar year" as "January first through December thirty-first of a given year." *See* Ohio Adm.Code 3747-3-01 (Background Investigations--Development, Construction, and Operation of a Disposal Facility); Ohio Adm.Code 109:6-1-01

(Waste Treatment and Disposal Facilities); Ohio Adm.Code 3701-36-03 (Local Health Districts); Ohio Adm.Code 5101:2-1-01 (Children Services Definition of Terms). This further supports the reading of the term applied by the trial court in this case, the Ohio Supreme Court, and multiple other Ohio courts.

{¶21} We thus hold that "calendar year," as used in Ohio Adm.Code 3701-53-08(D), means the period of time from January 1 through December 31.

*Application to the Current Case*

{¶22} As a consequence of our interpretation of the term "calendar year," we hold that the Ohio Administrative Code's directive that requires operators of the Intoxilyzer 8000 to "be subject to a proficiency examination once per calendar year" was not violated in this case. *See* Ohio Adm.Code 3701-53-08(D). Deputy Clayton was subject to a proficiency examination in 2012 and, pursuant to this section of the Ohio Administrative Code, he had until the end of 2013 to "be subject to" the 2013 exam requirement. We therefore reject Michael's contention that Deputy Clayton was not qualified to perform the breath analysis test on the Intoxilyzer 8000 on April 7, 2013, for failure to comply with Ohio Adm.Code 3701-53-08(D).

{¶23} Because no other basis for suppression was raised on appeal, this holding is dispositive of the case and we do not reach the argument raised by the parties over whether the April 7, 2013 valid test on Michael satisfies the

proficiency examination requirement of Ohio Adm.Code 3701-53-08(D). This alternative reasoning, advanced in the trial court by the State and mentioned by the trial court in its judgment entry, is not necessary to resolve the issues in this case.

{¶24} This opinion in no way addresses validity of Division (D) of the Ohio Administrative Code Section 3701-53-08 or the requirements for operation of the Intoxilyzer 8000. The narrow holding here concerns the definition of the term "calendar year" in Ohio Adm.Code 3701-53-08(D) and the finding that Deputy Clayton satisfied the proficiency exam requirement of once per calendar year, as is currently required by this provision.

{¶25} Assignment of error is overruled.

*Conclusion*

{¶26} Having reviewed the arguments, the briefs, and the record in this case, we find no error prejudicial to Appellant in the particulars assigned and argued. The judgment of the Lima Municipal Court of Allen County, Ohio, is therefore affirmed.

*Judgment Affirmed*

**SHAW, J., concurs.**

**ROGERS, J., concurs in Judgment Only.**

**/jlr**